**This order is SIGNED.**

Dated: November 20, 2017



**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Oliver David Dodart,<br><br>Debtor. | Bankruptcy Number: 16-20582<br><br>Chapter 7<br><br>Judge William T. Thurman |

### MEMORANDUM DECISION

The matter before the Court is the chapter 7 trustee's Motion to Turnover Property (the "Motion"). The Court conducted a hearing on the Motion on November 2, 2017. Patrick Johnson appeared on behalf of the chapter 7 trustee, David West (the "Chapter 7 Trustee"). Kristin Woods appeared on behalf of the Debtor.

After review of the pleadings filed, and based upon the oral arguments made by the parties at the hearing, the Court took the matter under advisement, and now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law

1

under Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014(c).

## I. Jurisdiction and Venue

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409. Notice of the hearings is found to be adequate in all respects.

## II. Facts

The parties have stipulated to the facts. This case was filed under Chapter 7 of the Bankruptcy Code on January 27, 2016 (the "Petition Date"), which created a bankruptcy estate of the Debtor's assets, and the Chapter 7 Trustee was appointed to administer the Debtor's Estate.

The Debtor is a beneficiary of the Amy Jean Sanders Family Trust, created on August 14, 2006 (the "Trust"). Amy Jean Sanders (the "Settlor") is the Debtor's mother, and she passed away on or about June 29, 2015. Greg Sanders is the Debtor's brother, and the current trustee of the Trust ("Trustee Greg Sanders").

Several clauses of the Trust must be considered in this ruling. They are as follows:

> **1.1 Purpose of the Trust**. The Settlor establishes this Trust for the primary benefit of the Settlor during the Settlor's lifetime, and for the Settlor's family thereafter.
> . . .
> **3.1 Rights of the Settlor**. As long as the Settlor is alive the Settlor reserves the right to amend, modify or revoke this Trust in whole or in part, and to make additions to or withdrawals from this Trust. . . .
>     . . .

**5.1 Trust for Settlor and Children**. The Trustee, in the Trustee's sole discretion, shall distribute part, all or none of the income and principal of the Trust Estate, as the Trustee deems necessary for the health, support, maintenance and education of the Settlor and issue. The Trustee's primary responsibility shall be to provide for the Settlor. The Trustee's secondary responsibility shall be to provide for Settlor's children. In making distributions pursuant to these directions, the Trustee need not make equal distributions to the various beneficiaries.

**5.2 Distribution Upon the Death of Settlor**. All remaining trust assets (principal and income) shall be held, administered and distributed as follows: Until the youngest living child of the Settlor is age 30, the Trustees, in their sole discretion, shall distribute such funds from income or principal of the Trust Estate, as they deem necessary for the support, maintenance and education of the Settlor's children, and grandchildren (if the Trustee deems the grandchildren to be in need); such payments need not be in equal amount. . . . If amounts are not disbursed under this provision after the youngest living child has reached age 30, then the remainder shall be distributed according to Section 5.3.

**5.3 Distribution - Separate Trusts**. When the Settlor's youngest child has reached 30 years of age, the Trustee, as soon as is conveniently possible, shall divide the remaining property of the Trust Estate into equal shares to create one share for each of Settlor's then living children and one share collectively for the issue of each of Settlor's then deceased children. The Trustee shall administer and distribute the shares as follows:

**5.301 Living Children**. The Trustee shall continue to hold the share created for each then living child as a separate trust for that child and shall distribute his or her share to each child upon the child's request therefore. . . .

. . .

**8.2 Spendthrift Clause**. The interest of each beneficiary in the income or principal of any Trust shall not be subject to the claims of any creditor, any spouse for alimony or support, or others. No creditor may attach, garnish or lien the assets of the Trust. No beneficiary may voluntarily or involuntarily alienate or encumber the beneficiary's interest in the Trust or the assets of the Trust. This provision shall not restrict the exercise of any power of appointment or withdrawal that is granted to a beneficiary in this Trust Agreement.

The Settlor had four children, and the Debtor and his siblings are each entitled to one-fourth of the Trust's assets. The Trust contained a number of assets that Trustee Greg Sanders has administered. The available cash and a life insurance policy have already been distributed equally among the four siblings. One of the siblings purchased the Settlor's home by paying the other three siblings one-fourth of the value each. Two of the real property assets were apparently

sold long ago, before the Settlor's death. The asset identified as the Clearfield property is "in limbo"[1] and does not appear to have much value, in the opinion of Trustee Greg Sanders. Another asset identified as the Monitor investment may be worth approximately $368,000.00 and Trustee Greg Sanders comments that he is "hopeful that this will be paid back over the next few years if the real estate market remain stable. This is not a certainty."[2] The Court assumes this means that the real property value will be converted to cash and then distributed. The Clearfield property and the Monitor investment are the only two assets left in the Trust. The parties provided a list of distributions from the Trust that show that each of the four siblings has received $150,500.00 over a period of time between July, 2015 and late in 2017.

The Debtor received distributions from the Trust prior to the Petition Date, which are not the subject of the Motion. On April 1, 2016, the Debtor testified during his continued 341 meeting that the Trust's remaining assets included real property in which Greg Sanders lives and a hard money loan investment.

The Debtor further testified at the 341 meeting that the Settlor's home was not for sale and he did not expect any additional distributions from the Trust until the home was sold. Not long thereafter, Greg Sanders decided to buy the home. On or about July 10, 2016, Greg Sanders made an initial payment of $10,000 to the Debtor for a portion of his one-fourth share of the

---

[1] This evaluation comes from a statement created by Trustee Greg Sanders summarizing the assets in the Trust, attached as Exhibit B to the Chapter 7 Trustee's Reply Memorandum, filed at Dkt. No. 83 on Oct. 27, 2017.

[2] *Id*.

value of the home. Greg Sanders made three additional payments to the Debtor for $20,000, $20,000 and $30,000 on September 3, 2016, November 8, 2016, and January 21, 2017, respectively, for a total of $80,000 for the Debtor's portion of the home. On or about January 15, 2017, the Debtor and the other beneficiaries of the Trust agreed that Greg Sanders purchased the house from the Trust for $320,000. The parties signed documents evidencing this sale.

In addition to the $80,000 received from the sale of the home, the Debtor received distributions of $7,000 and $3,500 from the Trust on or about April 19, 2016 and June 7, 2017, respectively. In sum, the Debtor has received $90,500.00 in distributions from the Trust since the Petition Date.

The administration of the Trust is still ongoing, and the Trust still owns assets in need of administration.

When the Debtor initially filed his petition, he included his interest in the Trust on Schedule B. Later, the Debtor amended Schedule B on October 4, 2017 and removed his interest in the Trust, citing the recent Tenth Circuit case, *Scott v. King (In re Amerson)*, 839 F.3d 1290 (10th Cir. 2016).

### III. Legal Analysis

The commencement of a bankruptcy case creates a bankruptcy estate that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11

U.S.C. § 541(a).[3] This phrase is to be construed broadly.[4] However, Congress expressly excluded a debtor's beneficial interest in a trust if there is "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law . . . ." § 541(c)(2). "'For purposes of most bankruptcy proceedings, property interests are created and defined by state law. Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate' under § 541." *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (quoting *Parks v. FIA Card Servs., N.A.*, 550 F.3d 1251, 1255 (10th Cir.2008)). If the spendthrift clause in the Trust was enforceable under applicable nonbankruptcy law on the Petition Date then the Debtor's interest in the Trust is not part of the bankruptcy estate. Conversely, if the spendthrift clause had expired or was no longer enforceable on the Petition Date, then the Debtor's interest in the Trust should be included in the bankruptcy estate and hence the distributions to the Debtor post-petition would have been inappropriate or at least, when distributed, would need to be returned to the estate or in this case to the bankruptcy trustee for administration.

### A. The Purpose of the Trust

The Trust is governed by Utah law, specifically the Utah Uniform Trust Code, codified at Title 75, Chapter 7 of the Utah Code Annotated. The rules of construction that apply to the

---

[3] Unless otherwise specified, all statutory citations are to Title 11 of the United States Code.

[4] *See In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010) ("We have pointed out that the scope of § 541 is broad and should be generously construed, and that an interest may be property of the estate even if it is 'novel or contingent.'").

interpretation of a will apply to the interpretation of the terms of a trust and the disposition of the trust property. *See* UCA § 75-7-111. "The primary object of a court, in construing the provisions of a trust, is to carry out the intent of the trustor or trustors." *Hull v. Wilcock*, 285 P.3d 815 (Utah Ct. App. 2012) (citing *In re Gerber*, 652 P.2d 937, 939 (Utah 1982). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003) (quoting *WebBank v. American Gen. Annuity Svc. Corp.*, 54 P.3d 1139 (Utah 2002).[5]

Neither party has alleged any ambiguity in the Trust document itself, or presented evidence that the Settlor intended the Trust to operate in any way that contravened the stated provisions of the Trust, and so the Court will interpret the Trust as written. Article V states that the purpose of the Trust is to provide for the "health, support, maintenance and education of the Settlor and issue." In carrying out this purpose, the Trustee was not compelled to make equal distributions to the various beneficiaries, but could make distributions based on the beneficiary's individual needs.

This instruction allowing discretion to make unequal distributions based on the needs of the beneficiary changed upon the death of the Settlor. As described in paragraphs 5.2 and 5.3 of

---

[5]*See also Lunceford v. Lunceford*, 139 P.3d 1073 (Ct. App. Utah 2006) ("Under Utah law, the basic rule of contract interpretation is that in interpreting a contract, the intentions of the parties are controlling. . . . The question of whether a contract is ambiguous is decided by the court as a matter of law."(internal citations omitted) (applying principles of contract law interpretation to a family trust)).

the Trust, upon the death of the Settlor, and after the youngest living child of the Settlor reached age 30,[6] the Trustee "shall divide" the property of the Trust equally to create one share per child. "The Trustee shall continue to hold the share created for each then living child as a separate trust for that child and shall distribute his or her share to each child upon the child's request therefore."[7] Once the Settlor had died, and all children have reached the age of 30, there is no further mention of allocating assets based on the needs of the beneficiary.[8] Instead, the Trustee is to divide equally and distribute the property of the Trust among the beneficiaries. Trustee Greg Sanders has undertaken this task, and has so far distributed $150,500.00 to each beneficiary. This equal distribution is in accordance with the distribution instructions that apply after the Settlor has died, when the Trustee is winding up its affairs. No new property has been added to the Trust since the Settlor's death, and Trustee Greg Sanders is working to liquidate the assets of the Trust.

Under Utah law, "a trust terminates to the extent the trust is revoked or expires pursuant to its terms [or] no purpose of the trust remains to be achieved." UCA § 75-7-410(1). The original purpose of the Trust was to provide for the Settlor and her children, and that purpose ended upon the death of the Settlor. However, upon the Settlor's death, the Trustee was to divide the remaining property into four equal shares for the four children, and then continue to hold the

---

[6]The Trust was created in 2006, when the Settlor's youngest child was over age 30. Accordingly, the Court finds that these paragraphs about distribution took effect upon the death of the Settlor.

[7]Trust at paragraph 5.301, quoted *supra*.

[8]If any of the children were not yet 30, then need-based distributions were authorized, even after the death of the Settlor. But all the children were years past this age limit.

one-fourth share as a separate trust. Income and principal "shall" be distributed upon the child's request, and until that request occurred, could be distributed based on the child's need. It appears that this provision separating the assets into four separate trusts prevents one child from receiving more than his one-fourth share of the trust, regardless of need. Trustee Greg Sanders is apparently still holding the separate trusts created upon the death of the Settlor, as contemplated by paragraph 5.3 and 5.301. Thus, the Court determines that the Trust has not yet expired pursuant to its terms.

### B. The Spendthrift Clause

The Trust contained a spendthrift clause which prevented a beneficiary or creditor from attaching the assets of the Trust. However, the spendthrift clause was subordinate to the right of distribution. "This [spendthrift] provision shall not restrict the exercise of any power of appointment or withdrawal that is granted to a beneficiary in this Trust Agreement."[9]

The Court determines that upon the Settlor's death, the purpose of the Trust changed from providing for the needs of the Settlor and her children to dividing the Trust assets equally and distributing them to the beneficiaries. The change in the purpose of the Trust also changed the rights of the beneficiaries in the assets. Thus, the beneficiaries acquired the right to request a distribution of their shares of the Trust's assets. This right to distribution trumped the spendthrift clause.

---

[9]Trust at paragraph 8.2, quoted *supra*.

A spendthrift clause is only valid "if it restrains both voluntary and involuntary transfer of a beneficiary's interest . . . ." UCA § 75-7-502(1). Since a beneficiary has no control over the property or distributions from a spendthrift trust, creditors should not be able to access the property either.[10] However, once a beneficiary has a right to demand distribution, he has the requisite amount of control to essentially have an ownership interest in the property, and the spendthrift provision is no longer enforceable. "An intended spendthrift restraint is also invalid with respect to a nonsettlor's interests in trust property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand immediate distribution of the property. Thus, if an income beneficiary also holds a presently exercisable general power of appointment (that is, a power currently to compel distribution of trust property to the power holder), a spendthrift restraint will not prevent the beneficiary's creditors or transferees from reaching the property that is subject to the power. "[11]

While the Court was unable to find any specific Utah case on point, the principle that a right to demand distribution invalidates a spendthrift clause has been upheld by other state courts. *See generally Brent v. State of Md. Cent. Collection Unit*, 537 A.2d 227 (Ct. App. Md. 1988) (collecting cases). This principle is also implied by the fact that "a spendthrift provision is

---

[10] *See, e.g., Carroll v. Takada (In re Carroll)*, 864 F.3d 512, 514 (7th Cir. 2017).

[11] Restatement (Third) of Trusts § 58 (2003). One of the illustrations posits a spendthrift trust in which the beneficiary is granted the power to withdraw the all or part of the principal once he reaches age 30, and thereby terminate the trust. In this situation, "although the restraint on alienation of [the beneficiary's] interest is initially valid, once [the beneficiary] reaches age 30 the spendthrift provision is no longer effective because he has the equivalent of complete ownership of the entire trust estate."

ineffective against a beneficial interest retained by the settlor."[12] A person may not have the right to control the assets in a trust, and at the same time refuse his or her creditors access to those same assets.

### C. Case Law

The parties have relied on two cases. In *In re Hilgers*, 371 B.R. 465 (10th Cir. BAP 2007), a chapter 7 trustee brought an adversary proceeding seeking to include a debtor's interest in three trusts in the bankruptcy estate. Each trust had a spendthrift provision. The debtor in the *Hilgers* case was a beneficiary to all three trusts. He filed bankruptcy more than three years after the last surviving trustor died. The BAP relied on the language of the trusts that required the remaining property to be distributed to the beneficiaries after the death of the life beneficiaries to find that the trusts terminated upon the death of the life beneficiaries. The trust property was to be distributed "expeditiously." The BAP found that a reasonable time had elapsed since the death of the three settlors, and therefore under Kansas law, creditors could have reached the distributions from the trusts that were due to the debtor.[13] Accordingly, the spendthrift provisions were no longer effective, and the three trusts were property of the bankruptcy estate.

The Debtor in this case seeks to distinguish the *Hilgers* opinion because Trustee Greg Sanders has not acted unreasonably in delaying distributions. Because the assets of the Trust are not liquid, the Debtor argues, Trustee Greg Sanders has acted reasonably in waiting to distribute

---

[12] Comments to Utah Code Ann. § 75-7-502.

[13] *See id*. at 471.

assets until they have been sold. In *Hilgers*, the trusts were no longer spendthrift trusts because the trustors had died, giving the remainder beneficiaries a right to distribution of the trust assets, and so creditors could reach the distributions from the trusts that were due to the debtor. The fact that the trustee in the *Hilgers* case had unreasonably delayed the distribution gave the creditors the ability to reach the distribution from the trust itself.[14] But regardless of the delayed distribution, the spendthrift provision had already expired.

The Debtor has also cited *Scott v. King (In re Amerson)*, 839 F.3d 1290 (10th Cir. 2016) to support the argument that the inclusion of a spendthrift trust in the bankruptcy estate is voluntary and not mandatory. The Debtor relied on this case when he amended Schedule B to remove his interest in the Trust. It does appear that the *In re Amerson* case concludes that a debtor may choose whether or not to include an interest in a spendthrift trust in the bankruptcy estate. However, the Court has determined that the spendthrift provision expired upon the death of the Settlor and was no longer enforceable under applicable nonbankruptcy law. Because the Trust was no longer a spendthrift trust, it was properly included in the bankruptcy estate regardless of how the Debtor reported it on his schedules.

### D. The Nature of the Trust Assets

The Debtor has also argued that his interest in the Trust has not fully vested because the Trust owns complex assets, and are still being administered. Because the assets are not liquid, the

---

[14]*See* KUTC § 58a-506(b), which states that a creditor may reach a mandatory distribution from a spendthrift trust if the distribution is not made within a reasonable time. The Utah Uniform Trust Code has a provision with nearly identical wording. *See* Utah Code Ann. § 75-7-506.

Debtor argues, he cannot demand distribution of them, and therefore the spendthrift provision is in full force.

Although the Court understands the Debtor's argument, the Court disagrees with it. A beneficiary's interest in a trust is determined by the trust provisions, and not by the nature of the assets. The remaining property in the Trust is not readily liquidated, but that does not change the fact that the Debtor has the right to demand a distribution of his share of those assets. The distribution may be delayed, or may consist of a statement of ownership rather than a cash distribution, but the right to demand a distribution is in the Trust document itself. The Debtor owns his share of the Trust property, even if it he may not yet possess it. In the absence of Utah case law on point, the Court is persuaded by the reasoning of the Maryland court when it stated that: "The key is the right of the beneficiary to the corpus as distinguished from his actual possession of it. So the rights of the creditors depend upon the beneficiary's interest in the property, not on the actual distribution of the fund to him."[15]

While the nature of the property in the Trust may limit or postpone the Debtor's right to an immediate distribution, it does not restrict the transfer of that interest. Section 541(c)(2) is not concerned with restrictions on the liquidity of the debtor's beneficial interest, but only with the restriction on the transfer of that beneficial interest. The sole restriction on the right to transfer the Debtor's beneficial interest was the spendthrift provision, and that expired with the death of the Settlor.

---

[15] *Brent v. State of Md. Cent. Collection Unit*, 537 A.2d 227, 231 (1988).

**E. The Chapter 7 Trustee's Administration**

The Debtor argues that this Motion is brought too late. The Petition Date was January 27, 2016. The continued 341 meeting was held on April 1, 2016. The Chapter 7 Trustee's Motion was filed September 22, 2017, which was almost a year and a half after the Debtor was questioned about the Trust at the 341 meeting. The Debtor cites § 704(1), which requires a bankruptcy trustee to administer and close a bankruptcy estate "expeditiously."

The Court finds that the Chapter 7 Trustee has not let this case languish. Property has been sold, claims against third parties have been investigated, and two separate settlement agreements have been approved by the Court. The Court notes that the payments the Debtor received from the Trust were dated between July 10, 2016 and January 21, 2017, all after the 341 meeting was conducted. The Chapter 7 Trustee states in his response that he first learned of the Trust distributions to the Debtor on September 19, 2017, after documents obtained by subpoena were submitted. This Motion was filed three days later, on September 22, 2017. The Debtor does not allege that the Chapter 7 Trustee knew of the Trust distributions any earlier. The Court determines that the Chapter 7 Trustee has not unduly delayed administration of the Debtor's estate.

**IV. Conclusion**

The Trust was a valid spendthrift trust at its creation in 2006. When the Settlor passed away on June 29, 2015, the successor trustee became obligated to create four shares of the Trust's property and continue to hold those shares subject to the beneficiaries' right to demand a

distribution. The Court reads the language of the trust to require that when the right to demand a distribution vested, the spendthrift provision expired.

The spendthrift provision was no longer in force on the Petition Date. Accordingly, the Debtor's interest in the Trust was properly included in the bankruptcy estate under § 541(a). The exception in § 541(c)(2) no longer applied because the restriction on the transfer of a beneficial interest was no longer enforceable under applicable nonbankruptcy law on the Petition Date.

For these reasons, the Court determines that the bankruptcy Trustee is entitled to an order for turnover in the amount of $90,500.00 which represents the amounts received from the Trust since the petition date. The Chapter 7 Trustee requested that the Debtor be ordered to turn over the funds within three days of the order. The Court, in its discretion, chooses to give the Debtor sixty days to comply.

Neither party has asked whether the Trustee needed to file an adversary proceeding to obtain a judgment. That is because it is a settled question. The Bankruptcy Appellate Panel for the Tenth Circuit has already endorsed the practice of granting a motion for turnover in a contested matter rather than requiring the filing an adversary proceeding. *See Rupp v. Auld (In re Auld)*, 561 B.R. 512 (10th Cir. BAP 2017).

The Court will prepare the order.

----------------------------------END OF DOCUMENT------------------------------------

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** shall be effected on the parties listed below.

Oliver David Dodart
583 Churchill Drive
Saint George, UT 84790
    *Debtor*

David C. West tr
321 North Mall Drive, Suite O-202
St. George, UT 84790
    *Chapter 7 trustee*

Patrick E Johnson
Cohne Kinghorn
111 East Broadway, Suite 1100
Salt Lake City, UT 84111
    *Attorney for chapter 7 trustee*

Kristin K. Woods
Kristin K. Woods, PLLC
214 East Tabernacle Street
St. George, UT 84770
    *Attorney for debtor*